UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTINE CARR,                          )
                                         )
                Plaintiff,               )
        v.                               )        CIVIL ACTION
                                         )        NO. 13-13273-JGD
METROPOLITAN LAW ENFORCEMENT             )
COUNCIL, INC., et al.,                   )
                                         )
                Defendants.              )

## MEMORANDUM OF DECISION AND
## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

August 20, 2014

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, Christine Carr, is a resident of the Town of Norfolk, Massachusetts.

On January 20, 2011, members of the Metropolitan Law Enforcement Council, Inc.

("MetroLEC"),[1] along with Norfolk and Foxborough police officers, executed a search

warrant at Ms. Carr's home.  During the search, an oil line in the basement was broken by

MetroLEC officers, as a result of which a substantial amount of oil was discharged in the

basement, and the home was eventually declared uninhabitable.  Ms. Carr has brought

this action against MetroLEC, its commanding officer Terrence M. Cunningham

(individually and in an official capacity), and unknown officers involved in the search,

---

[1]  As detailed more fully herein, "MetroLEC is an incorporated entity providing specialized police functions and services such as police crowd control, mobile police operations and special weapons and tactics (SWAT) team[s]."  (Complaint (Docket No. 1) ("Compl.") ¶ 3).

alleging violations of her federal and state constitutional rights and negligence. She has

also brought suit against the Town of Norfolk alleging negligence under the Massachu-

setts Tort Claims Act ("MTCA").[2] The parties have consented to the Magistrate Judge's

final jurisdiction over this case pursuant to 28 U.S.C. § 636(c).

This matter is presently before the court on the "Defendant, Town of Norfolk's,

Motion to Dismiss Plaintiff's Complaint" (Docket No. 5) and on the "Defendants,

Metropolitan Law Enforcement Council, Inc. and Terrence M. Cunningham's Motion to

Dismiss Plaintiff's Complaint" (Docket No. 13). By their motions, the defendants are

seeking dismissal of all the claims asserted against them. For the reasons detailed herein,

the Town's motion is ALLOWED and the MetroLEC defendants' motion is ALLOWED

as to Counts VII and X (intentional infliction of emotional distress) and otherwise

DENIED.

## II. STATEMENT OF FACTS

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the

court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all

reasonable inferences. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir.

1999). "Ordinarily, a court may not consider any documents that are outside of the

complaint, or not expressly incorporated therein, unless the motion is converted into one

---

[2] Ms. Carr has voluntarily dismissed Counts VII and X of her complaint alleging intentional infliction of emotional distress against the unnamed MetroLEC officers. (See Christine Carr's Memorandum in Opposition to the MetroLEC Defendants' Motion to Dismiss (Docket No. 20) ("Pl. MetroLEC Opp.") at 16).

for summary judgment." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint.'" Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). Applying this standard to the instant case, this court will consider the presentment letter attached to the Town's Motion to Dismiss and Memorandum (Docket No. 5) as Exhibit A. The facts relevant to the defendants' motions to dismiss are as follows.

### The Search Warrant

The events giving rise to this action began on January 19, 2011, when Foxborough police observed a brown motor vehicle with front-end damage, a broken headlight, and an open trunk, leaving a BP gas station around 2:38 a.m. (Compl. ¶13). Police pursued the vehicle but it could not be located. (Id.). Upon further investigation, police found that the gas station had been broken into and a cash register containing two hundred dollars had been stolen. (Id.). At 8:30 a.m. on January 19, 2011, responding to a general police broadcast, Detective Nathan Fletcher of the Norfolk Police Department contacted Detective Brian Gallagher of the Foxborough Police Department with information regarding the car's whereabouts and the identity of the alleged driver. (Id. ¶ 14). He described the car and stated that it was garaged at 4 Daisy Drive, Norfolk, and driven by Stephen Kirby. (Id.). Detective Fletcher also sent Detective Gallagher a photograph of the car, which

was subsequently identified by the Foxborough officer who had seen the vehicle leaving the BP Gas Station just prior to the discovery of the theft.  (Id.).

After the identification of the car, Detective Gallagher had another conversation with Detective Fletcher.  Detective Fletcher informed him that an unidentified informant had told him and an FBI agent that Stephen Kirby was a convicted bank robber who had committed many "smash and grab[]" jobs in the past, that he owned two sawed off shotguns, that the house where he was living was "booby trapped" with trip wires, and that he was "not afraid of police and will do what he has to but will not go back to jail." (Id. ¶15).

Later that day, based on the information provided by Norfolk Detective Fletcher, Foxborough Detective Gallagher applied for and obtained a "no knock" "nighttime" warrant to search the real property located at 4 Daisy Drive in Norfolk, Massachusetts (Carr's residence).  (Id. ¶16).  The warrant was issued by the Wrentham District Court. (Id.).

### Execution of the Search Warrant

The warrant was executed by Foxborough and Norfolk police beginning at approximately 2:00 a.m. on January 20, 2011.  (Id. ¶ 17).  In light of the information about a dangerous situation at the residence, the police requested and received assistance from officers assigned to MetroLEC to do an initial sweep of the residence.  (Id.).  As detailed more fully infra, MetroLEC is used by a number of local towns to provide specialized police services, including specialized SWAT activities.  (See id. ¶¶ 3-4).

4

MetroLEC officers, equipped with body armor, automatic weapons and mobile operation units, entered the residence at 4 Daisy Drive pursuant to the authority contained in the search warrant. (Id. ¶ 18). Upon observing "the overwhelming police presence including the MetroLEC SWAT team members," Ms. Carr, the owner of the premises, suffered severe distress and a medical emergency. (Id. ¶ 19). She was taken by ambulance to a local hospital where she was admitted for treatment. (Id.).

The plaintiff has alleged that "[d]uring the execution of the search supervised by an unknown supervising MetroLEC officer, an unknown MetroLEC officer kicked, stepped on and/or destroyed the heating oil line leading to the oil tank in the basement causing heating oil to spill and discharge in and throughout the basement of 4 Daisy Drive." (Id. ¶ 20). The MetroLEC officers then left, and when the local police tried to enter the home to continue the search, they were ordered by their supervisors to leave "because of the overwhelming smell of hazardous oil emanating throughout the house." (Id. ¶ 21). The Norfolk Building Department thereafter condemned the home, and Ms. Carr was not able to return. (Id. ¶¶ 22-23). On June 20, 2013, the home was sold at public auction by the mortgage holder. (Id. ¶ 24).

Additional factual details relevant to this court's analysis are described below.

## III. ANALYSIS - TOWN OF NORFOLK'S MOTION TO DISMISS

### A. Motion to Dismiss Standard of Review

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss, the court accepts as true all well-

pleaded facts and draws all reasonable inferences in favor of the non-moving party. Cooperman, 171 F.3d at 46. Dismissal is only appropriate if the pleadings, so viewed, fail to support "'a plausible entitlement to relief.'" Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 969 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief. Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). "'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the element of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)) (internal citations omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. (quoting Ashcroft, 129 S. Ct. at 1950). "This second principle recognizes that the court's assessment of the pleadings is 'context-specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.' '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief.'" Id. (quoting Ashcroft, 129 S. Ct. at 1950) (internal quotations and citation omitted; alterations in original).

Count XI of the Complaint is the only count directed to the Town. Therein, Ms. Carr alleges that the Town is liable under the MTCA for negligence or gross negligence because (1) its employees provided false and deceptive information which was used to obtain the search warrant, and (2) because it failed to adequately supervise the search of the home and thereby prevent the breaking of the heating oil supply line. (See Compl. ¶¶ 67-69). The Town has moved to dismiss the claim against it on the grounds that Carr's presentment letter was inadequate to meet the requirements of the MTCA to the extent that the plaintiff is asserting a claim "for negligence based on the information provided during the investigation and included in the application for the search warrant[.]" (Town Mem. (Docket No. 5) at 7).[3] In addition, the Town contends that it is entitled to immunity under Mass. Gen. Laws ch. 258, §§ 10(j) and 10(b). For the reasons detailed herein, the Town's motion is allowed.

**B.      Presentment**

Mass. Gen. Laws ch. 258, § 4 provides in relevant part that "[a] civil action shall not be instituted against a public employer on a claim for damages . . . unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose[.]" The purpose of the presentment requirement is to allow appropriate public officials "to ascertain the nature of the claim, and thereafter to investigate, to take appropriate action,

_____

[3] There is no dispute that the presentment letter is sufficient in connection with the claim relating to the Town's participation in the actual search.

and to satisfy themselves that the claim was not based on intentional conduct which would fall outside of G.L. c. 258." Gilmore v. Commonwealth, 417 Mass. 718, 721, 632 N.E.2d 838, 839-40 (1994). "Presentment ensures that the responsible public official receives notice of the claim so that that official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to insure that similar claims will not be brought in the future." Id. at 721-22, 632 N.E.2d at 840 (internal quotations and citation omitted). Ideally, "a presentment letter should be precise in identifying the legal basis of a plaintiff's claim," although it may be deemed sufficient so long as public official not "baffled or misled" with respect to whether a claim is being asserted "which constitutes a proper subject for suit" under the statute. Id. at 723, 632 N.E.2d at 840. Put another way, a presentment will not be deemed sufficient if "only those with the most active imaginations" could be expected to understand the nature of the claims. See id. at 722, 632 N.E.2d at 840. Courts are "concerned more with whether presentment has been made to the proper executive officer (*proper party noticed*) in a timely fashion (*timeliness*) than with the content of the presentment (*adequacy of content*)." Martin v. Commonwealth, 53 Mass. App. Ct. 526, 529, 760 N.E.2d 313, 316 (2002). Unfortunately for the plaintiff, in the instant case, even a most liberal reading of the presentment letter fails to put the Town on notice that the sufficiency of the information provided in connection with the search warrant was in any way at issue. Therefore, this court agrees with the Town that the presentment letter was inadequate as to such a claim.

Specifically, on September 14, 2011, counsel for Ms. Carr sent a letter to the Town of Norfolk outlining the facts of the oil spill and requesting damages "in settlement for the Town of Norfolk's employees negligence and responsibility for the release of oil at 4 Daisy Drive on January 20, 2011 under the Massachusetts Tort Claim Act. G.L. c. 258 et seq." (Town Mot., Ex. A at 2). As stated in the letter, "members of the Town of Norfolk Police Department, Town of Foxborough Police Department, along with other police officers from nearby municipalities and members of a specialized (SWAT) unit comprised of member municipalities executed a search warrant at the premises" owned by Ms. Carr. (Id. at 1). The search warrant is described as having been "obtained by a Detective from the Town of Foxborough and issued by the Wrentham District Court[.]" (Id.). The letter makes no mention of the content of the search warrant, and there is no indication that anyone from the Town of Norfolk provided information with respect to the search warrant, much less that the information was inaccurate. There is nothing in the letter which indicates that the police did not have the right to conduct the search pursuant to a duly authorized warrant. Rather, Ms. Carr complains that during the course of the search the "police broke the pipe attached to the oil tank causing an oil spill at the residence." (Id. at 2).

At most, based on the presentment letter, officials from the Town of Norfolk were put on notice that the role of the Norfolk police in executing the search warrant was being challenged. Arguably, this could include their role in supervising the search, as well as in conducting the actual search itself. However, the letter cannot fairly be read as covering

the role of the Norfolk police in obtaining the search warrant. In the absence of notice to the Town of this distinct claim, Ms. Carr's claim of liability based on the information provided for the search warrant must be dismissed. See Koran v. Weaver, 482 F. Supp. 2d 165, 171 (D. Mass. 2007) (presentment letter on behalf of injured husband did not cover wife's "independent" loss of consortium claim); Garcia v. Essex Cnty. Sheriff's Dept., 65 Mass. App. Ct. 104, 110-11, 837 N.E.2d 284, 289-90 (2005) (detainee's letters that failed to identify the legal basis for his claim were insufficient to satisfy presentment requirements).

## C. Mass. Gen. Laws ch. 258 § 10(j)

Norfolk contends that Carr's claim against the Town cannot survive as it is barred by Mass. Gen. Laws ch. 258 § 10(j), which provides, in relevant part, that public employers are immune from claims based "on an act or failure to act to prevent or diminish the harmful consequences of a situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer[.]" Mass. Gen. Laws ch. 258 § 10(j). Thus, the Town "is immune from suit under G.L. c. 258, § 10(j), for all harmful consequences arising from its failure to act to prevent the violent or tortious conduct of a third person, unless it 'originally caused' the 'condition or situation' that resulted in the harmful consequence." Kent v. Commonwealth, 437 Mass. 312, 317, 771 N.E.2d 770, 775 (2002). Since Ms. Carr has alleged that a MetroLEC officer kicked and broke the heating oil line, Norfolk argues that it was not the original cause of the situation. (Town Mem. at 10-11). Ms. Carr argues, however, that the Town

10

is liable because "MetroLEC officers would not have been present inside the home but for the representations made by Norfolk's employee police detective[,]" which escalated the situation "from a routine burglary investigation seeking $200 in cash and a cash register, into an early morning raid with an overwhelming police presence and violent search requiring specialized police forces to initially sweep the house for bombs, 'booby traps', trip lines and other weapons of mass destruction alleged to be present inside the home[.]" (Pl. Town Opp. (Docket No. 8) at 7-8). In addition, Ms. Carr argues, "liability is imposed directly upon Norfolk as the town's police employees failed to properly supervise the execution of the search warrant conduct within the town's jurisdiction at one of its resident's home." (Id. at 8). Even assuming that all of these claims were included in the presentment letter, this court finds that the Town is entitled to immunity under § 10(j) since it did not "originally cause" the situation whereby the pipe was broken.

The "original cause" language of the statute means "an affirmative act (not a failure to act) by a public employer that creates the 'condition or situation' that results in harm inflicted by a third party." Kent v. Commonwealth, 437 Mass. at 318, 771 N.E.2d at 775. Moreover, the public employer's act "must have materially contributed to creating the specific 'condition or situation' that resulted in the harm." Id. at 319, 771 N.E.2d at 775-76. Neither of the scenarios proffered by Ms. Carr meets these requirements.

Assuming, _arguendo_, that Ms. Carr can proceed under a theory based on the information Detective Fletcher provided (despite the lack of presentment), his conduct is still too far removed from the actions of the MetroLEC officers in breaking the pipe for the Town to be liable. Accepting as true that Detective Fletcher provided information which was instrumental in the issuance of the "no knock" "nighttime" warrant, his conduct is still not the "original cause" of an officer from a different agency physically breaking Ms. Carr's oil pipe. See id. at 319-20, 771 N.E.2d at 776 (parole board's decision to release prisoner is not the "original cause" of his subsequent involvement in a shooting). The MetroLEC officers could have been present in Ms. Carr's basement without causing the oil pipe to break. Thus, while it may be reasonably foreseeable that as a result of the information provided MetroLEC officers would be involved, it was not reasonably foreseeable that the officers would damage the property while carrying out their duties. See Parker v. Chief Justice for Admin. & Manag. of Trial Court, 67 Mass. App. Ct. 174, 179-80, 852 N.E.2d 1097, 1102 (2006) (probation officer's erroneous identification of plaintiff as the subject of a warrant did not "materially contribute" to situation where arresting police officers engaged in assault and battery in effectuating his arrest: police officers' conduct was not reasonably foreseeable and probation officer was entitled to immunity under § 10(j)).

Ms. Carr's second theory fares no better. As an initial matter, there are no factual allegations in the complaint which would establish the Town of Norfolk's duty to super-vise the activities of MetroLEC. Even assuming, _arguendo_, that there was such a duty,

again there are no factual allegations to support the conclusion that a failure to supervise materially contributed to the breaking of the pipe. Finally, even if the Town's failure to supervise contributed to Ms. Carr's harm, claims based on a failure to act are barred by § 10(j). As noted above, the "original cause" language of the statute requires an affirmative act: a failure to act does not impose liability for the conduct of a third person. See Audette v. Commonwealth, 63 Mass. App. Ct. 727, 733, 829 N.E.2d 248, 254 (2005) ("Even if a public employer does not create a dangerous condition or situation by an affirmative act, its failure to prevent or mitigate harm from that dangerous condition or situation may cause an injury. A claim based on such an injury is barred by § 10(j)."); Devlin v. Commonwealth, 83 Mass. App. Ct. 530, 535, 986 N.E.2d 882, 886 (2013) ("the mere failure to act cannot under this provision give rise to liability by the Commonwealth."). Since the Town is immune from liability under § 10(j), its motion to dismiss will be allowed.[4]

## IV.  ANALYSIS - METROLEC DEFENDANTS' MOTION TO DISMISS

### A.    Count I: § 1983 Claim Against MetroLEC

In Count I of her complaint, Ms. Carr has brought an action pursuant to 42 U.S.C. § 1983, alleging that MetroLEC is liable for using excessive force during the search of her home, in violation of her constitutional rights. While the parties agree that MetroLEC

---

[4]  In light of this conclusion this court will not address whether the Town is immune from liability pursuant to the discretionary function provision of Mass. Gen. Laws ch. 258, § 10(b).

is subject to liability under § 1983 as a "state actor," their analyses differ.  See

Malachowski v. City of Keene, 787 F.2d 704, 710 (1st Cir. 1986) (42 U.S.C. § 1983

covers only "interference with a constitutionally-protected right by someone acting under

color of state law. . . .").  MetroLEC contends that since it "consists of local police and

sheriff departments, it is a municipal organization or entity."  (MetroLEC Mem. (Docket

No. 13) at 8).[5]  Ms. Carr argues that "MetroLEC is a private corporation performing

delegated police functions normally reserved to the State[,]" and is therefore covered by

§ 1983.  (Pl. MetroLEC Opp. at 7).  As detailed herein, the record is not sufficiently

developed to determine the status of MetroLEC vis-à-vis the various statutes at issue in

this litigation.  For purposes of § 1983, however, this court concludes that MetroLEC is

subject to liability, at a minimum as a private entity assuming powers traditionally

exclusively reserved to the State.  Moreover, as the parties seemingly agree, its liability

will be assumed to be coterminous with those of a municipality under § 1983.

MetroLEC is authorized by Mass. Gen. Laws ch. 40, § 4J, which provides for

public safety mutual aid agreements.  That statute provides for the creation of a "law

enforcement council" which is defined as follows:

---

[5]  MetroLEC contends that the fact that the plaintiff has asserted a claim against it under the MTCA (Count III), which is applicable to actions against the State, bolsters this conclusion. (MetroLEC Mem. at 8 n.1).  However, the plaintiff argues that Count III is mislabeled and is, in fact, a straight tort claim.  (Pl. MetroLEC Opp. at 4 n.3).  The applicability of the MTCA will be discussed infra.  In any event, this court will not treat the fact that Count III is labeled as an MTCA claim as an admission on the plaintiff's part that MetroLEC is a governmental entity.

> "Law enforcement council", a nonprofit corporation comprised of
> municipal police chiefs and other law enforcement agencies
> established to provide: (i) mutual aid to its members pursuant to
> mutual aid agreements; (ii) mutual aid or requisitions for aid to non-
> members ...; and (iii) enhanced public safety by otherwise sharing
> resources and personnel.

Mass. Gen. Laws ch. 40, § 4J(a). MetroLEC employees have "the same powers, duties,

rights and privileges" and receive the same salary they would have received "if they were

operating in their own governmental unit." Mass. Gen. Laws ch. 40, § 4J(g). Neverthe-

less, in light of the fact that MetroLEC is an entity separate from its components, it may,

in fact, be considered a "person" under § 1983. Compare Hervey v. Estes, 65 F.3d 784,

791-92 (9th Cir. 1995) (intergovernmental association of police and prosecutors' offices

was not a "person" or entity subject to suit under § 1983, as it was not created as a

separate legal entity). Moreover, since MetroLEC is a private actor which has "assumed

a traditional public function," it qualifies as a "state actor" which may be subject to

liability under § 1983. See Brown v. Newberger, 291 F.3d 89, 93 (1st Cir. 2002)

(discussing when the conduct of a private party rises to the level of state action). See also

Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de P.R., 84

F.3d 487, 493-94 (1st Cir. 1996) ("For a private actor to be deemed to have acted under

color of state law, it is not enough to show that the private actor performed a public

function . . . . Rather, the plaintiff must show that the private entity assumed powers

traditionally exclusively reserved to the State.") (internal punctuation, quotations and

citations omitted). Thus, MetroLEC is subject to liability under § 1983.

## Scope of Liability

The next issue is the scope of MetroLEC's liability under § 1983. Whether because it is an organization of municipal law enforcement agencies, or because it is a private corporation performing the functions traditionally undertaken by municipal law enforcement agencies, MetroLEC's rights and obligations under § 1983 should be coterminus with those of a municipality. "It is beyond dispute that a local governmental unit or municipality can be sued as a 'person' under section 1983." Hervey, 65 F.3d at 791.[6] "However, like supervisory liability, municipal liability is not vicarious. Municipalities can be held liable only if municipal employees commit unconstitutional acts and those actions are shown to have been caused by a 'policy or custom' of the government." Estate of Bennett v. Wainwright, 548 F.3d 155, 177 (1st Cir. 2008) (quoting Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 41 (1st Cir. 2007)) (citing Monell v. Dept. of Soc. Servs. of the City of N.Y., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). See also Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013). "While the existence of a municipal custom may be evidenced by the repetition of unlawful acts by officers, a single instance of police misconduct in the field, standing alone, is insufficient to establish the endorsement of an informal policy or custom by the City." McElroy v. City of Lowell, 741 F. Supp. 2d 349, 354 (D. Mass 2010). Rather, the custom or practice

---

[6] However, "[g]overnmental units may not assert the good faith of their officers or employees as a defense to liability under section 1983[,]" so the doctrine of qualified immunity does not apply. Hervey, 65 F.3d at 791.

"must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989). "With respect to a failure to train claim, only if the 'municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.'" Estate of Bennett, 548 F.3d at 177 (quoting City of Canton v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989)).

In Count I of her complaint, the plaintiff alleges that the "agents, representatives and/or employees" of MetroLEC, "when acting under the color of police powers," acted "with complete disregard for the consequences of their actions [and] unreasonably used excessive force in entering and searching her property located at 4 Daisy Drive, Norfolk, Massachusetts causing the release of hazardous heating oil throughout the premises." (Compl. ¶ 26). In her claim against Police Chief Cunningham, she also alleges that, "on information and belief," "there was a pattern and practice of both incomplete and improper supervision and training of officers assigned to MetroLEC in that the officers routinely utilized excessive and unnecessary force in carrying out police operations and functions, including specifically the execution of search warrants and/or were not properly trained or supervised in the proper manner and means to execute search warrants

of residential premises."  (Compl. ¶ 38).[7]  In opposing the motion to dismiss, plaintiff

argues that "[c]learly MetroLEC had policies and procedures for conducting raids and the

execution of search warrants[,]" which will be explored during discovery.  (Pl. MetroLEC

Opp. at 6).  Moreover, she asserts that through discovery she expects to be able to show

due to "improper training and supervision by its supervisors" an inappropriate "aggressive

military climate" and "military commando type culture" were created, and that this

aggressive climate "was at the root of the behavior that resulted in MetroLEC officers

kicking and/or breaking off the heating oil line" in Ms. Carr's basement.  (Id. at 7).

    While admittedly a close question, this court finds that the allegations are

sufficient at this stage to withstand the motion to dismiss.  See Bordanaro, 871 F.2d at

1157-58 (municipal liability for police beating of unarmed occupants of a room: liability

based on unconstitutional custom and practice of breaking down doors without a warrant

to effectuate the arrest of felons); McGrath v. MacDonald, 853 F. Supp. 1, 5-6 (D. Mass.

1994) (motion to dismiss denied with respect to claim of municipal liability based on

alleged maintenance of a policy of inadequate training of police officers to evaluate

probable cause to arrest).  The motion to dismiss Count I is denied, and the claim may be

reassessed after further development of the record.

---

    [7] Since a suit against MetroLEC's commanding officer in his official capacity is, in effect,
a suit against MetroLEC, this allegation in appropriately considered in connection with assessing
the sufficiency of the claim against MetroLEC.  See Kentucky v. Graham, 473 U.S. 159, 166, 105
S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) ("an official capacity suit is, in all respects other than
name, to be treated as a suit against the entity.").

**B.     Count II: MCRA Claim Against MetroLEC**

In Count II of her Complaint, Ms. Carr alleges as follows:

> Defendant MetroLEC, Inc. by threats, intimidation and coercion in
> complete disregard for the consequences of its actions unreasonably
> used excessive force and with excessive force entered and search[ed]
> Plaintiff Carr's residence located at 4 Daisy Drive and in the course
> of that search damaged the real and personal property violating
> Plaintiff's constitutional rights secured by the Fourth and Fourteenth
> Amendments to the United States Constitution and the right to be
> free from unreasonable searches guaranteed under the Massachusetts
> Declaration of Rights Article 12.

(Compl. ¶ 29).  MetroLEC has moved to dismiss this claim on the grounds that it is a

municipality, and therefore not liable under Mass. Gen. Laws ch. 12, § 11I, and that a

"police presence, in and of itself," does not satisfy the MCRA requirement of threats,

intimidation and coercion.  (MetroLEC Mem. at 9-10).  Again, while the question is a

close one, this court concludes that the sufficiency of this claim is best reviewed on a

fuller record, and the motion to dismiss is denied.

Under Massachusetts law, one acting under color of law may not interfere with the

exercise of rights of any individual by use of threats, intimidation or coercion.  See Mass.

Gen. Laws. 12 §11H.  While a municipality may be liable as a "person" under § 1983, it

is well established that "a municipality is not a 'person' covered by" the MCRA.

Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 591-92, 747 N.E.2d 729, 744

(2001).  See also Kelley v. LaForce, 288 F.3d 1, 11 n.9 (1st Cir. 2002).  Thus, for this

claim it is significant whether MetroLEC is a municipality, or a private actor assuming

the traditional responsibilities of a government actor.  This court concludes that, at this

juncture, the record is not sufficiently developed concerning the characteristics of MetroLEC to rule on this issue. Since, however, it is clear that MetroLEC has a separate corporate existence, this court will assume for the motion to dismiss that it qualifies as a "person" covered by the MCRA. Therefore, this court will address MetroLEC's next objection – that the plaintiff has failed to plead that MetroLEC employed "threats, intimidation or coercion."

"Massachusetts courts apply an objective "reasonable person" standard to deter-mine whether conduct constituted threats, intimidation, or coercion." Spencer v. Roche, 755 F. Supp. 2d 250, 265 (D. Mass. 2010). "A 'threat' means the 'intentional exertion of pressure to make another fearful or apprehensive of injury of harm.' 'Intimidation' means putting a person in fear for the purpose of compelling or deterring his or her con-duct. 'Coercion' means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do." Goddard v. Kelley, 629 F. Supp. 2d 115, 128 (D. Mass. 2009) (quoting Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474, 631 N.E.2d 985 (1994). Thus, while "threats and "intimida-tion" "usually require actual or threatened physical force[,]" the element of coercion "is a broader category that may rely on physical, moral or economic coercion." Spencer, 755 F. Supp. 2d at 265 (citations omitted).

In the instant case, the plaintiff has alleged that MetroLEC's show of force greatly exceeded the crime charged (theft of $200) and that the "overwhelming police presence in the early morning hours of 2:00 a.m. was designed to place the occupants in fear and

influence the conduct of the occupants to gain their complete acquiescence and compel anyone present not to contest or voice any objection to the search." (Pl. MetroLEC Opp. at 8). Case law is clear that a "normally lawful" use of force "may constitute coercion under the MCRA if the causation requirement is met – in other words, if such [force] is applied in order to cause the plaintiff to give up his constitutional rights." Spencer, 755 F. Supp. 2d at 267, and cases cited. Whether the defendants' use of force in the instant case was so excessive as to be intended to coerce the plaintiff into giving up her constitutional rights is best addressed in the context of a more complete record. Therefore, the motion to dismiss Count II of the Complaint is denied.

### C. Count III - Tort Claim

Count III of the complaint purports to state a tort claim against MetroLEC for negligently, grossly negligently and/or recklessly searching the plaintiff's home and causing damage thereby. (Compl. ¶¶ 33-34). Although labeled a claim under the Massachusetts Tort Claims Act, applicable to public employers, Ms. Carr now argues that the claim against MetroLEC is not governed by that statute as it is a private corporation. (See Pl. MetroLEC Opp. at 4 n.3). For its part, MetroLEC has moved to dismiss this count on the grounds that the plaintiff has failed to satisfy the presentment requirement of Mass. Gen. Laws ch. 258, § 4, and that suit is barred by Mass. Gen. Laws ch. 258, § 10(b). Thus, for this count as well, whether MetroLEC is a governmental entity or simply a private corporation assuming duties usually assigned to the state is critical. For the

reasons detailed herein, this court finds that the record is insufficient to determine if the MTCA controls in this action. Again, further development of the record is necessary.

Mass. Gen. Laws ch. 258, § 4 provides that "[a] civil action shall not be instituted against a *public employer* on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose[.]" (Emphasis added). "Public employer" is defined as "the commonwealth and any county, city, town, educational collaborative, or district . . . and any department, office, commission, committee, *council,* board, division, bureau, institution, agency or authority thereof . . . *which exercises direction and control over the public employee, but not . . . any other independent body politic and corporate*." Mass. Gen. Laws ch. 258, § 1 (emphasis added). "Absent plain statutory direction, it devolves on the courts to decide on a case by case basis whether a particular body politic and corporate should be treated as 'more public than private.'" Kargman v. Boston Water & Sewer Comm'n, 18 Mass. App. Ct. 51, 55, 463 N.E.2d 350, 353 (1984). In particular, courts focus on whether the entity is financially and politically independent of a government agency. See Dattoli v. Hale Hosp., 400 Mass. 175, 179, 508 N.E.2d 100, 102 (1987).

In the instant case, the record is insufficient to establish whether MetroLEC is a public employer or an "independent body politic and corporate." On its face, MetroLEC is a council that exercises control over public employees, and thus fits directly in the definition of a public employer. Moreover, it is comprised of municipal police chiefs and

other law enforcement agencies. While established as a separate corporation, its employees have the same rights and obligations, and are to be treated in the same manner as if operating in their own governmental unit. Mass. Gen. Laws ch. 40, §§ 4J(g) & (h). Payment to the employees is made by the municipal employers. Id. § 4J(g). Since the component parts of MetroLEC are clearly covered by the MCRA, an argument can be made that there is no rational basis for finding that it is not a public employer. See Lafayette Place Assoc. v. Boston Redev. Auth., 427 Mass. 509, 531-33, 694 N.E.2d 820, 834-35 (1998) (concluding that BRA is a public employer; analysis includes the fact that the BRA is similar to other planning and housing boards that are public employers and should be treated similarly).

On the other hand, in her memorandum Ms. Carr cites to a number of factors regarding the structure, governance, financing and financial obligations of MetroLEC which would favor concluding that it is an independent corporation and not a public employer. (See Pl. MetroLEC Opp. at 10-11). MetroLEC has not responded to this argument. The record is simply insufficient for this court to determine at this time whether MetroLEC is governed by Mass. Gen. Laws ch. 258. This issue will, therefore, have to await the further development of the record.

In the event that Mass. Gen. Laws ch. 258 applies, and the plaintiff is found to have satisfied the presentment requirements of the statute, MetroLEC's contention that the claim against it is barred by Mass. Gen. Laws ch. 258, § 10(b) is unpersuasive. Under that statute, public employers are immune from claims "based upon the exercise or

performance or the failure to exercise or perform a discretionary function or duty on the part of the public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." Ms. Carr's claim that the MetroLEC officers were negligent in carrying out the search does not qualify as a discretionary act that involves policy making or planning. Therefore, MetroLEC is not immune from suit pursuant to Mass. Gen. Laws ch. 258, § 10(b).

As the court in <u>Comeau v. Town of Webster</u>, 881 F. Supp. 2d 177 (D. Mass. 2012), recently explained the law:

> The first step in deciding whether the discretionary function exception forecloses a plaintiff's claim "is to determine whether the governmental actor had any discretion ... to do or not to do what the plaintiff claims caused [the] harm." *Harry Stoller & Co. v. Lowell,* 412 Mass. 139, 141, 587 N.E.2d 780 (1992). "[I]f the governmental actor had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, [the] discretionary function exception to governmental liability has no role to play in deciding the case." *Id.* The second, and typically more difficult step in this analysis is to determine whether the discretion that the employee exercised is that kind of discretion for which § 10(b) provides immunity from liability. *Greenwood v. Easton,* 444 Mass. 467, 469-70, 828 N.E.2d 945 (2005). **The discretionary function exception is narrow, "providing immunity only for discretionary conduct that involves policy making or planning."** *Harry Stoller,* 412 Mass. at 141, 587 N.E.2d 780; *Horta v. Sullivan,* 418 Mass. 615, 621, 638 N.E.2d 33 (1994). "Indeed, we can presume that all governmental employees, in their official duties, act in furtherance of some governmental policy." *Horta,* 418 Mass. at 621 n.12, 638 N.E.2d 33. **When the injury-causing conduct has a "high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability**." *Whitney,* 373 Mass. at 218, 366 N.E.2d 1210. A court must analyze

the specific facts of each case to decide whether discretionary acts
involve policy making or planning.  *Horta,* 418 Mass. at 621, 638
N.E.2d 33.

881 F. Supp. 2d at 183-84 (emphasis added, footnote omitted).  <u>See</u> <u>also</u> <u>Devlin v.</u>

<u>Commonwealth</u>, 83 Mass. App. Ct. at 533, 986 N.E.2d at 886 ("The type of discretionary

decisions which may not form the basis for liability under § 10(b) are those with respect

to policy and planning.") (internal quotations and citation omitted).  "Decisions that

require some discretion, but that do not involve social, political, or economic policy

considerations are not immunized by § 10(b)."  <u>Alake v. City of Boston</u>, 40 Mass. App.

Ct. 610, 614, 666 N.E.2d 1022, 1025 (1996).

MetroLEC characterizes plaintiff's claim as being about "whether, when, how, and

whom to investigate," and whether to seek a search warrant.  (MetroLEC Mem. at 12-13).

However, whether or not those are discretionary functions is not relevant to the plaintiff's

claim.  In this Count of her complaint, Ms. Carr is challenging the way the officers

conducted the search, <u>i.e.</u>, whether their negligence resulted in the pipe being broken.

Presumably, as discussed above, MetroLEC had policies and practices governing the

level of force to use in any given circumstance, but the sufficiency of those regulations is

not the issue in Count III.  Rather, "the negligence asserted by the plaintiff[ ] in this case

appears to concern the carrying out of established policies rather than actual

policymaking and planning."  <u>Ku v. Town of Framingham</u>, 62 Mass. App. Ct. 271, 278,

816 N.E.2d 170, 176 (2004) (Town not immune from suit alleging negligent operation of

a truck salting road).  Therefore, MetroLEC is not protected from liability under Count III based on the discretionary function exception.

### D.      Counts IV, V and VIII: Qualified Immunity

In Count IV of her Complaint, Carr purports to state a claim against the Police Chief, Terrence Cunningham, pursuant to 42 U.S.C. § 1983 for failure to supervise and train, and for allowing the use of excessive and unnecessary force in carrying out police operations by MetroLEC officers.  (See Compl. ¶¶ 37-40).  Count V purports to state a claim under 42 U.S.C. § 1983 against an "unnamed supervising officer of MetroLEC, Inc." for failing "to properly supervise his or her's agents, representatives and/or employees who intentionally and unreasonably used excessive force in entering and searching Plaintiff Carr's property" in violation of her Fourth Amendment rights.  (Id. ¶ 43).  In Count VIII, Carr asserts that an "unnamed officer of MetroLEC, Inc." violated her "Fourth Amendment right to be secure against an unreasonable search and seizure when acting under the color of police powers," by "intentionally and unreasonably [using] excessive force in entering and searching Plaintiff Carr's property" and "causing the release of hazardous heating oil throughout the premises."  (Id. ¶ 55).  The defendants have moved to dismiss these counts on the grounds of qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting

26

Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396

(1982)).  "Qualified immunity balances two important interests - the need to hold public

officials accountable when they exercise power irresponsibly and the need to shield

officials from harassment, distraction, and liability when they perform their duties

reasonably. The protection of qualified immunity applies regardless of whether the

government official's error is a mistake of law, a mistake of fact, or a mistake based on

mixed questions of law and fact."  Pearson, 555 U.S. 231, 129 S. Ct. at 815 (quotations

and citations omitted).

The determination whether an official is entitled to qualified immunity requires an

assessment as to whether the facts alleged or showed by the plaintiff "make out a

violation of a constitutional right" and, if so, "whether the right at issue was clearly

established at the time of defendant's alleged misconduct."  Id. at 232, 129 S. Ct. at 816

(quotations and citations omitted.)  "[T]he second, 'clearly established,' step of the

qualified immunity analysis . . . in turn, has two aspects."  Maldonado v. Fontanes, 568

F.3d 263, 269 (1st Cir. 2009).  As the First Circuit has described:

> One aspect of the analysis focuses on a clarity of the law at the time
> of the alleged civil rights violation.  To overcome qualified
> immunity, the contours of the right must be sufficiently clear that a
> reasonable official would understand that what he is doing violates
> that right.  The other aspect focuses more concretely on the facts of
> the particular case and whether a reasonable defendant would have
> understood that his conduct violated the plaintiffs' constitutional
> rights.  Indeed, it is important to emphasize that this inquiry must be
> undertaken in light of the specific context of the case, not as a broad
> general proposition.

Id. (quotations, citations and alterations omitted).  Thus, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. (quotations, citations and alterations omitted).

In the instant case, the existence of Ms. Carr's Fourth Amendment right to be free from an unreasonable search of her home was well established as of the time of the search.  "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression."  United States v. Ramirez, 523 U.S. 65, 71, 118 S. Ct. 992, 996, 140 L. Ed.2d 191 (1998).  See also United States v. McCarty, 475 F.3d 39, 43 (1st Cir. 2007) ("Even a search conducted pursuant to a warrant may be 'unreasonable' given the manner in which the search has been conducted.").  Nevertheless, the defendants argue that "[i]n a light most favorable to the Plaintiff, she will, at best, only be able to show an accident based on the condition of the basement." (MetroLEC Mem. at 19).  This argument is based on facts that are not alleged in the complaint, and are not properly considered in connection with a motion to dismiss.  In any event, the defendants have undertaken a fact-based analysis that requires further development of the record.  It is certainly not common that a search of a home results in the total destruction of the premises.  Ms. Carr should be able to proceed to develop the record and determine what actually occurred.  Therefore, the claim against the as-of-yet

unnamed MetroLEC officers who conducted the search and broke the pipe (Count VIII) should proceed.

Similarly, the claim against the unnamed MetroLEC supervisor who allegedly failed to supervise those who engaged in the destructive search should be allowed to proceed. "Although a superior officer cannot be held vicariously liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. . . , he may be found liable under section 1983 on the basis of his own acts or omissions[.]" Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 578, 581 (1st Cir. 1994) (internal citations omitted). In the instant case, the allegations of the complaint can be fairly read as asserting a claim against the MetroLEC supervisor who was on site during the search, and therefore is seeking to hold him liable for his own conduct. (See Compl. ¶ 43). Again, this claim requires further development of the record.

Carr is basing her claim against Police Chief Cunningham "for his own acts or omissions in permitting a culture that condoned the unrestrained use of excessive force by MetroLEC officers" and for his actions in hiring, training and/or supervising officers "with a deliberate indifference toward the possibility that deficient performance of a task may contribute to a civil rights [deprivation]." (Pl. MetroLEC Opp. at 15). It is well established that a supervisor may be liable under § 1983 for "formulating a policy, or engaging in a custom, that leads to the challenged occurrence." Maldonado-Denis, 23 F.3d at 582. Moreover, in a § 1983 action against a supervisor who was not a direct participant in the incident at issue, "liability attaches if a responsible official supervises,

29

trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation . . . . Under such a theory, a supervisor may be brought to book even though his actions have not directly abridged someone's rights; it is enough that he has created or overlooked a clear risk of future unlawful action by a lower-echelon actor over whom he had some degree of control." Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999) (internal citations omitted). "[T]he extent of a superior's knowledge of his subordinate's proclivities is a central datum in determining whether the former ought to be liable (or immune from suit) for the latter's unconstitutional acts." Id. at 46. This is a fact-dependent inquiry and the issue should be addressed again after further development of the record. For these reasons, the motion to dismiss Counts IV, V and VIII is denied.

**E.      Counts VI and IX: Massachusetts Civil Rights Act**

In Count VI, Ms. Carr purports to state a claim pursuant to Mass Gen. Laws ch. 12, § 11(I) against the unnamed supervising officer of MetroLEC and, in Count IX, she purports to state a civil rights claim against the unnamed officer of MetroLEC who broke the pipe. The defendants have moved to dismiss these claims on the grounds of immunity. "[T]he Supreme Judicial Court of Massachusetts has held that MCRA claims are subject to the same standard of immunity for police officers that is used for claims asserted under § 1983." Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010). Therefore, for the reasons stated above, the motion to dismiss these claims will be denied at this time as well.

## V.  CONCLUSION

For all the reasons detailed herein, the "Defendant, Town of Norfolk's, Motion to Dismiss Plaintiff's Complaint" (Docket No. 5) is ALLOWED.  The "Defendants, Metropolitan Law Enforcement Council, Inc. and Terrence M. Cunningham's Motion to Dismiss Plaintiff's Complaint" (Docket No. 13) is ALLOWED as to Counts VII and X (<u>see</u> note 2, <u>supra</u>), but otherwise DENIED.

       <u>  / s / Judith Gail Dein           </u>
       Judith Gail Dein
       U.S. Magistrate Judge